UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11 C 0014 |
| v. ) | |
| ) | |
| THOMAS DART, Cook County ) | |
| Sheriff et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Terrance Smith, proceeding *pro se*, is an inmate in the custody of the Cook County Department of Corrections. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by denying him a wheelchair pillow, special shoes, and a lower bunk permit.

Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (R. 41.) For the reasons below, the Court grants Defendants' motion.

BACKGROUND

I.   **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the

advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted).

Under the Local Rule, the moving party must file "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The purpose of the Local Rule is to permit the parties to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that a "statement of material facts did [] not comply with [Local] Rule 56.1 [because] it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture").

The opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *TradeFin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 408-09 (7th Cir. 2009) (citing Local Rule 56.1(b)); *see also Sys. Dev. Integration, LLC v. Comp. Sci. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010). Additionally, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The responding party does not satisfy the Local Rule by offering "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon*, 233 F.3d at 528, or statements that do not properly cite to the record, *see Cadoy*, 467 F.3d at 1060; *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809-10 (7th Cir. 2005).

advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted).

Under the Local Rule, the moving party must file "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The purpose of the Local Rule is to permit the parties to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that a "statement of material facts did [] not comply with [Local] Rule 56.1 [because] it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture").

The opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *TradeFin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 408-09 (7th Cir. 2009) (citing Local Rule 56.1(b)); *see also Sys. Dev. Integration, LLC v. Comp. Sci. Corp.*, 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010). Additionally, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The responding party does not satisfy the Local Rule by offering "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon*, 233 F.3d at 528, or statements that do not properly cite to the record, *see Cadoy*, 467 F.3d at 1060; *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809-10 (7th Cir. 2005).

District courts may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). *Pro se* litigants, although entitled to some leniency, must comply with the Local Rules. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004).

In this case, Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1. Defendants additionally served Plaintiff with a notice that clearly explained Local Rule 56.1's requirements and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement may result in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Nonetheless, many of Plaintiff's responses to Defendants' Rule 56.1 Statement fail to either admit or deny the asserted facts, or fail to cite to the record when disputing the facts. The Court disregards such responses.[1] *See, e.g., Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *2 (N.D. Ill. Feb. 23, 2012) (citing *Cady*, 467 F.3d at 1060).

---

[1] Additionally, some of the facts that Plaintiff offers in response appear to run afoul of Rules 602 and 701-02 of the Federal Rules of Evidence, *see* Fed. R. Evid. 602 (requirement of personal knowledge); 701-702 (admission of expert testimony), as well as the rule in this Circuit that a party may not contradict his prior deposition testimony for purposes of creating a genuine issue of material fact on a motion for summary judgment. *See Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); (*see also* Pl.'s 56.1 Stmnt. Resp. ¶¶ 18, 20, 70.)

II.   **The Parties**

Plaintiff is a pre-trial detainee in the custody of the Cook County Department of Corrections ("CCDOC"). (R. 43, Defs.' 56.1 Stmnt. & R.47, Pl.'s 56.1 Stmnt. Resp. ¶ 2.) Defendants are: (1) Thomas Dart, the Cook County Sheriff; (2) Salvador Godinez, the Executive Director of the CCDOC; (3) Marilyn Martinez, a superintendent with the Cook County Sheriff's Department who oversaw Housing Division Number 10 from February 7, 2010 until December 28, 2010; and (4) Avery Hart, M.D., the Chief Medical Officer of Cermak Health Services of Cook County ("Cermak"), which is the medical facility serving the CCDOC.[2] (*Id.* ¶¶ 3-6.) Plaintiff asserts claims against Defendants in their official and individual capacities. (*Id.* ¶ 8.)

III.  **Underlying Medical Condition**

In 2002, a police officer shot Plaintiff in the back, causing injuries to Plaintiff's spinal cord. (*Id.* ¶ 16.) As a result of the gunshot wound, Plaintiff uses intermittent self-catheterization. (*Id.*) Plaintiff suffers from "saddle syndrome paralysis," a condition "he alleges [to] cause[] him to have no pressure in the bottom of his feet through the back of his legs to his buttocks." (*Id.* ¶ 21 (internal quotation marks and alternations omitted).) According to Plaintiff, if he "walks around and stands up for too long, he gets bedsores on his feet." (*Id.* (internal quotation marks omitted).) Additionally, Plaintiff experiences muscle spasms and "shooting 'shock pains' from his waist down." (*Id.* ¶ 17.)

---

[2]The Amended Complaint additionally names Dr. John Raba and Dr. Katina Bonaparte as Defendants. Dr. Raba has not been served, and the Court accordingly dismisses him from this action, without prejudice. Dr. Bonaparte has appeared, but Plaintiff states in his response to the motion for summary judgment that "the plaintiff admits that he never seen [sic] Dr. Bonaparte in the Div 10 dispensary [–] it was PA Davis, and she's not named in this suit so these claims are moot." (Pl.' Resp. at 7; Pl.'s 56.1 Stmnt. Resp. ¶¶ 7-8, 12.) The Court construes this statement as a motion to voluntarily dismiss Dr. Bonaparte from this action, and grants the motion as such.

After being shot in 2002, Plaintiff underwent rehabilitation at Oak Forest Hospital. (*Id.* ¶¶ 16-18.) Plaintiff was "provided a wheelchair pillow during rehabilitation to use to sit," and has not used such a pillow since his release from rehabilitation. (*Id.*) Plaintiff is neither paralyzed nor confined to a wheelchair. (*Id.*) Defendants state that a "lay person would not know by looking at Plaintiff that he has any medical conditions" (Defs.' 56.1 Stmnt. ¶ 21 (citing Ex. B at 68:14-69:7)), but Plaintiff disagrees, stating that he has "a great limp that [is] obvious from a drop foot due to his paralysis and is required to w[ear] a foot brace." (Pl.'s 56.1 Resp. (citing 3/1/10 medical records).) Following his discharge from the Oak Forest Hospital, Plaintiff was incarcerated until 2008. (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 19.)

**IV.    CCDOC Custody**

On or about February 13, 2010, Plaintiff was arrested and held in CCDOC custody from February 14, 2010 until March 1, 2010. (*Id.*) As part of CCDOC's intake process, a prison official performed a medical examination of Plaintiff, and Plaintiff "was sent to the emergency room at Cermak, where he was examined by Dr. Yan Yu, an attending physician." (*Id.* ¶ 24.) Dr. Yu treated Plaintiff for a urinary tract infection, and conducted a "physical examination of Plaintiff, which was normal." (*Id.* ¶ 26.)

According to Plaintiff, he told Dr. Yu that he suffered from "saddle syndrome paralysis" and requested a pillow, special shoes for which he needed a prescription,[3] and a low bunk permit. (*Id.* ¶¶ 28-29.) Upon Dr. Yu's recommendation, CCDOC assigned Plaintiff to Division 10, a medical unit with access to a nurse (Defs.' 56.1 Stmnt. ¶ 30), although Plaintiff asserts that the

---

[3] "When detainees enter the jail, he/she is issued a pair of blue canvass shoes, if necessary; otherwise, the detainee keeps the shoes he/she is admitted with. In addition, detainees have access to shower slippers through the commissary." (*Id.* ¶ 23.)

"medical staff" was "unresponsive and inadequate." (Pl.'s 56.1 Stmnt. Resp. ¶ 30.)

While housed in Division 10, Plaintiff alleges that Defendant Hart saw him for a follow-up visit relating to a urinary tract infection, during which:

> Plaintiff explained that he needed supplies for self-catheterization and that he needed a wheelchair pillow and shoes. Dr. Hart provided Plaintiff with the supplies for catheterization and told Plaintiff that he would write him a prescription for the wheelchair pillow and shoes. Plaintiff did not have any bedsores when he saw Dr. Hart. Plaintiff never saw Dr. Hart again.

(Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶¶ 31-32.) On or about March 1, 2010, Plaintiff "was transferred" to the custody of the Illinois Department of Corrections ("IDOC"). (*Id.* ¶ 22.)

Plaintiff returned to the custody of CCDOC on July 27, 2010, whereupon Dr. Sunita Williamson, a non-party doctor, saw Plaintiff in the Cermak emergency room for complaints of a bladder infection and boils on his buttocks and legs. (*Id*. ¶¶ 33-34.) Plaintiff requested a wheelchair pillow and prescription shoes, but Dr. Williamson denied Plaintiff's requests as not medically necessary. (*Id*. ¶ 34.) Plaintiff asserts that the doctor failed to appreciate Plaintiff's medical history. (*Id*.)

On August 6, 2010, Plaintiff filed a grievance, "complaining that he had not received 'medical essentials' including a bottom bunk permit, a wheelchair pillow, and comfortable shoes, and requested that he be provided these items." (*Id.* ¶ 41.) The grievance, which prison officials treated as a "request," indicates "'Referred to: Supt. Div. 10.'" (*Id.*) Plaintiff did not receive a written response to the grievance. (*Id.*) "Plaintiff did not file another grievance in August, September or October because he did not feel it was necessary," nor did Plaintiff request or receive any medical attention during that period. (*Id.*)

On November 1, 2010, Plaintiff "filed a detainee health service request form seeking medical attention for bedsores on his feet and butt that he had for one week." (*Id.*) Plaintiff

6

experienced pain in his feet and soreness when he sat down, and felt a knot on the inside of his buttocks that he believed was a bedsore. (*Id.* ¶¶ 48-51.) The sores were not visible because, according to Plaintiff, the sores "start from the inside out. (Pl.'s 56.1 Stmnt. Resp. ¶ 51.) On November 5, 2010, Plaintiff filed a grievance, seeking "medical treatment for three painful bedsores." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 53.) The grievance was "processed as a request," and indicates "'Referred to: Supt. Div. 10.'" (*Id.*)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

Rule 56, however, "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.

Ed. 2d 686 (2007). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dep't,* 602 F.3d 845, 849 (7th Cir. 2010).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted)). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## ANALYSIS

Plaintiff's Amended Complaint asserts a claims of deliberate indifference, pursuant to Section 1983 and the Fourteenth Amendment to the U.S. Constitution, against Defendants in their individual and official capacities.

### I. Denial of Medical Care – Individual Liability

In his Amended Complaint, Plaintiff alleges that the individual Defendants were deliberately indifferent to Plaintiff's serious medical condition, namely his susceptibility to painful "bedsores due to his saddle syndrome paralysis." (Pl.'s Resp. at 1.) Plaintiff claims that he suffered injuries because Defendants refused to provide him with, or prevented him from obtaining, a wheelchair pillow, prescription shoes, and/or a lower bunk permit.

####    A.    Legal Standard

The Fourteenth Amendment protects pretrial detainees, like Plaintiff, from deliberate

indifference to serious medical needs. *See* U.S. Const. amend. XIV; *Taylor v. Couture*, No. 08 C 4871, 2010 WL 4073790, at *2 (N.D. Ill. Oct. 12, 2010) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). This is the same protection that the Eighth Amendment affords convicted prisoners. *See* U.S. Const. amend. VIII; *Rosario v. Brawn*, --- F.3d ----, 2012 WL 661679, at *4 (7th Cir. 2012) ("Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause, and we apply the same deliberate indifference standard in both types of cases.") (internal quotation marks and citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

As the Seventh Circuit recently explained, "a successful § 1983 deliberate indifference claim requires [the plaintiff] to prove that '(1) the harm that befell the prisoner [is] objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety.'" *Rosario*, 2012 WL 661679, at *4 (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). The second element – deliberate indifference – requires the plaintiff to prove that the defendant had subjective knowledge of the risk to the plaintiff's health, and consciously disregarded that risk. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "Evidence that the official acted negligently is insufficient to prove deliberate indifference." *Id.*; *see also McGowan*, 612 F.3d at 640 ("negligence, even gross negligence, does not violate the Constitution"). Instead, "[d]eliberate indifference is intentional or reckless conduct." *Berry*, 604 F.3d at 440; *see also Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) ("conduct must be reckless

in the criminal sense").

### B. Analysis

Here, even if Plaintiff could show an objectively serious medical condition, *see Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (chronic, substantial pain may satisfy first element), no reasonable jury could find that any Defendant acted with deliberate indifference. Plaintiff's inability to prove deliberate indifference is dispositive, and therefore summary judgment is appropriate for Defendants. *See Taylor*, 2010 WL 4073790, at *2 (assuming that the plaintiff could show a serious medical condition, and granting summary judgment for defendants on the basis that there is no evidence of deliberateness).

### 1. Defendants Dart and Godinez

Plaintiff alleges that Defendants Dart and Godinez were deliberately indifferent to Plaintiff's medical needs because each individual "had knowledge of inadequate medical care and the grievance procedure, yet failed to oversee the CCDOC administration that caused the wrong doing to the Plaintiff." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 9.) Plaintiff, however, "admits that he had no personal interaction with either [Defendants] Dart or Godinez," and that he seeks to hold these Defendants liable "because they are the head officials . . . and are to supervise officials as well as medical staff . . . ." (Pl.'s Resp. at 4-5; *see also* Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶¶ 76-77.)

Defendants argue that under these circumstances, no reasonable jury could find that either Defendants Dart or Godinez acted with a culpable state of mind for purposes of constitutional liability. The Court agrees. Indeed, participation in a constitutional deprivation is a prerequisite for individual liability under § 1983. *See Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal citations omitted). Section 1983 does not support liability

under a theory of respondeat superior. *See, e.g., T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (holding that supervisory liability attaches only if supervisors "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see'") (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988)); *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Plaintiff offers no evidence to suggest that either Defendant acted with deliberate indifference, or otherwise had a culpable state of mind, for purposes of individual liability under the Fourteenth Amendment and § 1983.

Accordingly, the Court grants Defendants' motion for summary judgment as to Defendants' Dart and Godinez in their individual capacities.

### 2.      **Defendant Martinez**

Summary judgment is additionally proper as to Defendant Martinez in her individual capacity. Plaintiff predicates his claim against Defendant Martinez on her alleged failure to respond in writing to Plaintiff's grievances dated August 2, 2010 and November 5, 2010. (Pl.'s Resp. at 5; *see also* Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 10.) According to Plaintiff, his "medical issues could have been resolved about the issuing of a wheelchair pillow and shoes before the bedsores occurred if Supt. Martinez had answered the plaintiff[']s grievance[s] for medical attention . . . ." (Pl.'s Resp. at 5.) Each grievance was "processed as a request" and referred to "Supt. Div. 10." (*Id.*, Ex. B(1)-(2).) Defendant Martinez "has no independent recollection of receiving Plaintiff's grievances that were processed as requests on August 6, 2010 and November 5, 2010." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 74.)

Even if Defendant Martinez reviewed Plaintiff's grievances, the record is devoid of any evidence upon which a reasonable jury could find that Defendant Martinez acted with a culpable state of mind. With regard to the August 2, 2010 grievance, Plaintiff stated in his grievance that

as of just a few days prior, July 27, 2010, he was in communication with the Cermak hospital staff. (Pl.'s Resp., Ex. B(1).) The Seventh Circuit has made clear that a "non-medical prison official," like Defendant Martinez, "cannot be held 'deliberately indifferent simply because [the official] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson v. Doughty*, 433 F.3d 1001, 1011-12 (7th Cir. 2006) (internal citation omitted); (*see also* Defs.' 56.1 Stmnt. & Pl.'s 56.1 Resp. ¶ 74 ("Supt. Martinez does not have access to detainees' medical records nor is she able to render any medical decisions").)

With regard to the November 5, 2010 grievance in which he requested medical treatment, it is undisputed that, "[w]hen Supt. Martinez receives a grievance/request related to medical services or a medical provider, it is her practice that she reviews the request, conducts a preliminary investigation, and then refers the grievance/request to a medical provider so he/she can address the detainee's concerns." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 75.) This evidence supports a reasonable inference that Defendant Martinez referred the request to a medical provider. S*ee* Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of an eyewitness, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."). Plaintiff offers no competent evidence to suggest otherwise. *See Trentadue v. Redmon*, 619 F.3d 648, 653 (7th Cir. 2010) ("Once the [movant has] shown that the facts entitle them to judgment in their favor, the burden shifts to [the non-movant] to identify some evidence in the record that establishes a triable factual issue. To satisfy this burden, [the non-movant] must show more than some metaphysical doubt as to the material facts, neither speculation nor generic challenges to a witness's credibility

are sufficient to satisfy this burden.") (internal quotation marks and citations omitted).

Nor does Plaintiff offer any evidence that Defendant Martinez otherwise acted with deliberate indifference towards Plaintiff's medical needs. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care."). Indeed, Plaintiff was "seen in November 2010 in the Division 10 dispensary" by a medical provider. (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 58); *see also Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) ("[T]he grievance documents suggest that the Warden was aware of the problem and believed that his subordinates were attending to the issue. This is not deliberate indifference.").

Furthermore, as to both grievances, viewing the record in the light most favorable to Plaintiff, "[a]t most, the apparent failure" of Defendant, a non-medical official, to respond in writing to Plaintiff's medical requests "evinces a negligent handling of the complaint and not deliberate indifference." *Johnson,* 433 F.3d at 1012 (citing *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) ("Evidence that the official acted negligently is insufficient to prove deliberate indifference.")).

Accordingly, the Court grants Defendants' motion for summary judgment as to Defendant Martinez in her individual capacity.

### 3. Defendant Hart

Finally, the record contains insufficient evidence from which a reasonable jury could find that Defendant Hart acted with deliberate indifference. Plaintiff claims that Defendant Hart "failed to submit his name for a wheelchair pillow and shoes, in February 2010, which caused a delay in Plaintiff receiving the supplies." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 11.)

Plaintiff cites to no medical records to substantiate his allegation that Defendant Hart ever reached a diagnosis that required these supplies. *See Mayo v. Snyder*, 166 Fed. App'x 845, 848 (7th Cir. 2006) (holding that district court did not err in granting summary judgment on the basis of lack of injury, where "medical records reveal no evidence of physical injury").

Nor does Plaintiff offer any evidence to suggest that Defendant Hart did not "submit his name," or that if he did, Defendant Hart had any knowledge that the supplies did not reach Plaintiff, who was transferred to another facility just days later. *See Grose v. Corr. Med. Servs.*, No. 06-CV-15175, 2009 WL 2741515, at *2 (E.D. Mich. Aug. 25, 2009) (holding that a medical professional's failure to submit a written request for post-op care does not support a reasonable inference of deliberate indifference); *Holton v. Jess*, No. 07-CV-402, 2009 WL 666946, at *6 (E.D. Wis. Mar. 12, 2009) (holding that the plaintiff's complaint amounted to "a broken promise, not deliberate indifference"). *Cf. Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (repeated unfulfilled promises to assist over two year period).

Indeed, viewing the record in the light most favorable to Plaintiff, Dr. Hart's alleged failure to supply Plaintiff with the requested items cannot support a jury finding that he acted with deliberateness. *See, e.g. Flayter v. Wis. Dep't Corr.*, 16 F. App'x 507, 510 (7th Cir. 2001) ("[A] medical decision not to order a specific treatment is not cruel and unusual punishment; it is at most medical malpractice, which is not properly alleged in a § 1983 action[.]"). At best, Plaintiff's evidence suggests only that Dr. Hart forgot about the prescriptions, or that the prescriptions did not reach Plaintiff for an unknown reason, not that Defendant Hart deliberately failed to take certain actions despite subjective knowledge that harm would befall Plaintiff. *See Williams v. Guzman*, 346 Fed. App'x 102, 105 (7th Cir. 2009) ("Williams cannot show that the doctors were aware of the delay in getting him Amitriptyline").

In any event, within days after Plaintiff allegedly saw Defendant Hart, the CCDOC transferred Plaintiff to the custody of the IDOC, where a state medical official immediately evaluated him. Although a delay in medical treatment may give rise to a constitutional claim, Plaintiff offers no competent medical evidence that he suffered additional harm on account of any delay in treatment between the time that he saw Dr. Hart and his medical evaluation at IDOC. *See Williams v. Liefer*, 491 F.3d 710, 714-16 (7th Cir. 2007) (citing *Landston v. Peters,* 100 F.3d 1235, 1241-42 (7th Cir. 1996) ("[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed") (internal citations and quotation marks omitted)); *Knight v. Wiseman*, 590 F.3d 458, 466-67 (7th Cir. 2008).

### C. Conclusion

For all of these reasons, the Court grants Defendants' motion for summary judgment on Plaintiff's claims against Defendants in their individual capacities.

## II. *Monell* Claim

Plaintiff additionally pleads a *Monell* claim against Defendant Dart, the Cook County Sheriff, and Defendant Hart, the Chief Medical Officer of Cermak Health Services of Cook County, in their official capacities. (Am. Compl. at 6); *see also Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 611 (1978) (holding that local governments are "persons" subject to suit under Section 1983, and are liable where an "official municipal policy of some nature caused a constitutional tort"). The Court construes Plaintiff's *Monell* claim as a claim against the Cook County Sheriff's Department and Cook County, respectively. *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the

15

government entity itself.") (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 SD. Ct. 358, 116 L. Ed. 2d 301 (1991)); *Zaborowski v. Dart*, No. 08 C 6946, 2011 WL 6660999, at *5 (N.D. Ill. Dec. 20, 2011).

### A. Legal Standard

A "municipality or other local government may be liable" under 42 U.S.C. § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation of rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citing *Monell*, 436 U.S. at 692). Such a governmental body cannot be "vicariously liable under § 1983 for their employees' actions," but instead are "responsible only for 'their own illegal acts.'" *Connick*, 131 S. Ct. at 1359 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). As the Supreme Court has explained:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are actions for which the municipality is actually responsible.

*Connick*. 131 S. Ct. at 1359 (internal citations and quotation marks omitted).

In this context, courts recognize three types of policies or customs that might subject a municipality to liability under *Monell*:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Zaborowski,* 2011 WL 6660999, at *5-6 (citing *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007)).

**B.     Analysis**

Here, Plaintiff alleges that the "constitutional violations" detailed in his Complaint and Amended Complaint "were directly caused by the customs, policies, and practices of Cook County, as promulgated, enforced, and disseminated by [those employed by] Cook County who were charged with ensuring adequate medical care to pre-trial detainees at the C.C.J and Cermak hospital, and who failed to provide access to proper medical care in this and many other documented cases." (Am. Compl. at 6.) Specifically, Plaintiff asserts that "Defendants have a wide-spread and well-settled custom and practice of: (1) delaying investigation and mitigation of serious medical conditions suffered by significant portions of the detainee population; (b) failing to timely respond to detainee request[s] and grievances for medical treatment; and (c) ignoring and failing to implement recommendations and prescriptions for serious health care needs." (*Id.*) Plaintiff "relies solely on [a] United States Department of Justice ("DOJ") Report issued on July 11, 2008, to Cook County and Sheriff Dart ("DOJ Report") and his grievances to support his *Monell* claim." (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶ 14.)

Defendants seek to dismiss Plaintiff's *Monell* claim on the basis that Plaintiff cannot establish an underlying constitutional violation, and therefore his *Monell* claim must fail. (Defs.' Mem. at 12.) The Court agrees. As discussed above, Plaintiff has failed to establish any constitutional injury arising out of the actions of any individual Defendants. *See City of Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (noting the well-settled rule that *Monell* does not permit "the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm").

Furthermore, viewed in the light most favorable to Plaintiff, the record shows that

17

Plaintiff received frequent medical attention while in CCDOC custody. (Defs.' 56.1 Stmnt. & Pl.'s 56.1 Stmnt. Resp. ¶¶ 24-28 (Feb. 13, 2010; examination and treatment by Dr. Yu); ¶ 31 (between Feb. 14 and Mar. 1, 2010; examination and treatment by Dr. Hart for urinary tract infection); ¶¶ 34-37 (July 27, 2010; examination and treatment by Dr. Sunita Williamson, who did not believe it was necessary to prescribe a pillow, shoes, or low bunk permit); ¶ 42 ("Plaintiff did not require medical attention in September or in October of 2010, and therefore, Plaintiff did not request any medical attention during that time period."); ¶ 43 (Aug. 27, 2010; nurse in Division 10); ¶ 44 (Aug. 2010 through Dec. 2010; received weekly prescriptions and medical supplies); ¶¶ 56-58 (Nov. 16, 2010; examination and treatment by physician assistant Barbara Davis); ¶ 61 (Dec. 5, 2010; "seen in the Division 10 dispensary"); ¶ 64 (Feb 14, 2010; examination and treatment by Dr. Yu); ¶ 66 (Feb. 22, 2011; follow up appointment and treatment by physician assistant Manisha Patel, received sleeping pillow).)

Viewed in the light most favorable to Plaintiff, the record does not support a jury finding that Plaintiff suffered a constitutional injury. Prison officials may not have provided Plaintiff with the medical care that he requested, but this is of little moment for purposes of establishing a constitutional injury. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (holding that the constitution does not entitle an inmate to "specific care") (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("the Constitution is not a medical code that mandates specific medical treatment")). It is undisputed that Plaintiff frequently received medical attention while in the custody of CCDOC, and that numerous medical professionals sought to address his specific medical concerns. *See Montanez v. Feinerman*, 439 Fed. App'x 545, 548 (7th Cir. 2011) ("dissatisfaction with the course of treatment [] does not rise to the level of" a constitutional violation"); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (concluding that plaintiff's

claim of deliberate indifference failed where he "repeatedly received treatment"). Plaintiff points to no evidence from which a reasonable jury could infer that any individual employed by CCDOC acted with deliberate indifference to Plaintiff's medical needs. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999) (holding that although the conduct of prison medical staff was "troubling," the evidence "of negligence of malpractice does not implicate constitutional concerns," and the plaintiff has "not produced sufficiently probative evidence that [prison] officials were deliberately indifferent to [the plaintiff's] serious medical condition," nor can the plaintiff "show that the defendants knew of and disregarded a risk of serious medical harm to [the plaintiff]").

Accordingly, because Plaintiff cannot establish an underlying constitutional violation, his *Monell* claim necessarily fails as a matter of law. *See Florek v. Vill. of Mundelein,* 649 F.3d 594, 601 (7th Cir. 2011) (affirming grant of summary judgment to municipality on a *Monell* claim, where the plaintiff failed to show any underling constitutional violation resulting from the alleged unconstitutional policy).

### C. Conclusion

For all of the reasons, the Court grants Defendants' motion for summary judgment on Plaintiff's *Monell* claim against Defendants Dart and Hart in their official capacities.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment, and accordingly enters judgment for Defendants.

Plaintiff may appeal this final order by filing a notice of appeal pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. If Plaintiff seeks to appeal, he must file his notice of appeal within 30 days from the date of this final order. *See* Fed. R. App. P. 4(1)(a). At that

time, Plaintiff must pay all applicable fees pursuant to Rule 4(e) of the Federal Rules of Appellate Procedure. As of November 1, 2011, the Seventh Circuit imposes a docketing fee of $450.00 and a filing fee of $5.00, for a total fee of $455.00. If Plaintiff seeks leave to appeal *in forma pauperis*, he must comply with the requirements of Rule 24 of the Federal Rules of Appellate Procedure, which sets forth the required content of a motion for leave to proceed *in forma pauperis* on appeal. See Fed. R. App. P. 24.

Additionally, Plaintiff is advised that under the Prison Litigation Reform Act of 1996, Pub. L. 104-34, Title VIII, 110 Stat. 1321, "a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* 'if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.'" *Evans v. Ill. Dep't of Corrections*, 150 F.3d 810, 811 (7th Cir. 1998) (quoting 28 U.S.C. § 1915(g)).

**Date:** _March 21, 2012_____

                                              **ENTERED**

                                              *[signature]*
                                              **AMY J. ST. EVE**
                                              **United States District Court Judge**